IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DONALD W. BARNETT, ) | |
| ) | No. 15 C 6279 |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | Magistrate Judge Sidney I. Schenkier |
| CAROLYN W. COLVIN, Acting ) | |
| Commissioner of the U.S. Social ) | |
| Security Administration, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER[1]

Plaintiff Donald W. Barnett seeks judicial review under 42 U.S.C. § 405(g) of a final decision of Defendant Commissioner of the Social Security Administration ("SSA") denying his request for waiver of overpayment. *See* 42 U.S.C. §§ 404(a). After the Administrative Law Judge ("ALJ") denied the request for waiver, Mr. Barnett filed a timely request for review of the ALJ's decision with the Appeals Council. The Appeals Council denied review, and plaintiff sought review in federal court. By agreement, the case was remanded for further proceedings (13 C 2548: doc. # 35). The Appeals Council assumed jurisdiction of the remanded case and, on May 21, 2015, denied Plaintiff's request for waiver (R. 267), making the Appeals Council's decision the final determination of the Commissioner. *See* 20 C.F.R. § 404.984(a).

Before the Court is Plaintiff's motion for summary judgment. Mr. Barnett contends that the Appeals Council erred in denying his request that the SSA waive its claim for overpayments because he was not at fault for causing the overpayment, and requiring repayment would defeat the purpose of the Social Security Act (doc. #16: Pl. Mot. for SJ, at 6-8).

---

[1] On October 7, 2015, by consent of the parties and pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1, this case was assigned to this Court for all proceedings, including entry of final judgment (doc. # 11).

For the reasons that follow, Plaintiff's motion is granted in part and denied in part. The case is remanded to the SSA for further proceedings consistent with this opinion.

## I.

Mr. Barnett has the equivalent of three years of college credits (doc. # 16-3: Pl. Aff., at ¶ 1). Mr. Barnett worked at Illinois Tool Works at least until he applied for disability on September 27, 2000.[2] SSA granted him Disability Insurance Benefits ("DIB") beginning in September 2000 (R. 270).

On February 28, 2006, the SSA requested that Mr. Barnett complete a "Work Activity Report" (R. 227). He completed the report on June 12, 2006 (R. 227-235). In the report, Mr. Barnett affirmed that his current employer was the Village of Franklin Park (the "Village") (R. 231). Mr. Barnett reported that he performed part-time work as a reserve police officer for the Village from March 11, 2004 through the time of the report, earning $12.00 per hour (R. 231). However, elsewhere in the report, in a section entitled "Special Work Conditions," Mr. Barnett wrote that in February 2006 the Village hired him part-time on a trial basis as a building inspector, and on May 1, 2006 hired him full-time "in inspectional services on a probational period" (R. 231, 233).[3]

On January 25, 2007, the SSA sent Mr. Barnett a letter stating that he had completed his trial work period in November 2005 (R. 51). The letter explained that during the trial work period, a recipient can work and earn any amount of money for up to nine months (the months do not have to be consecutive) and still receive disability payments (R. 53). The letter clarified that

---

[2] Plaintiff's brief and the ALJ's November 22, 2011 decision state Mr. Barnett worked at Illinois Tool Works until 2002, but that he applied for DIB on September 27, 2000 and was found disabled as of that that month (doc. # 16; Pl. Mot. for SJ, at 2; R. 12). Neither the briefs nor the Commissioner's decisions reconcile or address this discrepancy. We note it here, but this discrepancy does not affect our decision.

[3] On this report, Mr. Barnett did not provide the SSA with the pay he received as a building inspector. This information was later provided in an August 19, 2007 Work Activity Report as set forth below (R. 233, 240, 244).

the SSA only counts months in which a recipient earns more than $580.00 a month beginning in January 2004, and $590.00 a month beginning in January 2005 (*Id.*). The letter further stated that after the trial work period, a claimant's right to monthly payments will continue if he or she is disabled and has average earnings less than $860.00 a month beginning in January 2006 and less than $900.00 a month beginning in January 2007 (R. 54). Specifically, the letter states, "[i]f your average earnings are more than these amounts, we call your work 'substantial' and we will stop your monthly payments" (*Id*). However, the SSA found that Mr. Barnett's work did not amount to "substantial" work that would disqualify him from continuing to receive benefits (*Id.*). The SSA sent Mr. Barnett a second letter on February 1, 2007 with substantially the same information (R. 56).

Mr. Barnett contends that he contacted the SSA to request that the SSA cancel his benefits because he was working full time (R. 86). Specifically, Mr. Barnett telephoned the SSA's toll-free 800 telephone number on February 5, 2007 and on July 10, 2007, requesting that his benefits be canceled effective immediately (R. 57). On August 19, 2007, he completed a second work activity form. In the report, Mr. Barnett stated that he had been working full-time for the Village of Franklin Park as a code enforcer since May 1, 2006, starting at $15.00 per hour and earning $18.30 per hour as of August 19, 2007 (R. 240, 244).

On August 21, 2007, the SSA sent a third letter notifying Mr. Barnett that as of May 2006, he had sufficient earnings to qualify as substantial work (R. 60). The letter stated that Mr. Barnett was not entitled to payments from August 2006 and thereafter (R. 60, 271). Mr. Barnett received his last DIB check from the SSA in September 2007 (R. 81).

On June 23, 2008, the SSA sent Mr. Barnett a fourth letter, informing him that the SSA had overpaid him in the amount of $24,443.00 (R. 69). The letter states that due to his work and

3

earnings, Mr. Barnett was not due the benefits he was paid from May 2006 through September 2007, specifying that the determination of the overpayment was made based on the following benefits paid: $1,616.00 per month from August through November 2006; $1,668.00 per month from December 2006 through September 2007; and, $1,289.00 for Medicare (*Id.*).[4] The letter provided information on how to repay the SSA, the right to appeal, and the right to request a waiver (R. 69-70). Mr. Barnett was informed he could obtain a waiver of the need to make repayment only if "both of the following are true: a. The overpayment was not your fault in any way; and b. You could not meet your necessary living expenses if we recovered the overpayment, or recovery would be unfair for some other reason" (R. 70).

On July 22, 2008, Mr. Barnett filed a form with the SSA requesting that it waive the overpayment or reconsider the overpayment determination (R. 73-75). In his request, Mr. Barnett stated that he thought he was entitled to the payments he received because the payments continued to come even after he notified the SSA that he was working full time. On October 22, 2008, before responding to Mr. Barnett's request for waiver, the SSA scheduled a "personal conference" for October 29, 2008 at 11:30 a.m., at which Mr. Barnett could review and add to his file, and (by himself or with an assistant or attorney) could present his case to the SSA representative who would decide his waiver request (R. 77).[5]

On December 19, 2008, in a brief letter, the SSA denied Mr. Barnett's request for a waiver, finding he was at fault in causing the overpayment. The SSA explained Mr. Barnett failed to provide the SSA with timely information regarding his work, and accepted payments

---

[4]While his Trial Work Period ended May 2006, Mr. Barnett was allowed to receive payments through July 2006. After the Trial Work Period, a claimant's disability ends if their work activity shows the ability to do substantial work. The SSA, however, pays benefits for the month that the disability ends and the following two months regardless of how much is earned (R. 62).

[5]It is unclear from the record whether this meeting ever took place.

4

that he "should have known and been expected to know were incorrect" (R. 85). However, because Mr. Barnett could not repay the overpayment in full without causing hardship, the SSA determined that Mr. Barnett could pay forty dollars a month until the overpayment was reimbursed (*Id.*).

## II.

On February 10, 2009, plaintiff filed a request for a hearing before an ALJ to review the denial of his waiver request (R. 86, 88-89). Mr. Barnett participated in a hearing before an ALJ on December 3, 2009 (R. 47). He waived his right to be represented by an attorney at that hearing. There is no transcript of the December 3, 2009 hearing, but the ALJ's decision described Mr. Barnett's testimony. In addition to the facts listed above, Mr. Barnett testified regarding his financial status. Mr. Barnett and his wife continue to work; she earned $9.80 per hour (though her pay was subsequently cut by $1.00 per hour) and he earned $19.04 per hour (R. 48). In addition to utility expenses, they owe $22,000.00 on their house and $30,000.00 in credit card debt (due in part to $10,000.00 in costs for repairing a broken sewer line under their driveway) (*Id.*). Their two cars are paid off, and they have $600.00 in a savings account and $900.00 in a checking account (*Id.*). Mr. Barnett testified he had been repaying $40.00 a month toward the overpayment since January 2009, which has not been a hardship (*Id.*).

On December 17, 2009, the ALJ issued a decision denying Mr. Barnett's waiver request (R. 47-49). In a short paragraph, noting plaintiff did not dispute there was an overpayment or its amount, the ALJ found "it is far from clear that [Mr. Barnett] was without fault for all of the overpayment, given his education" (R. 49). The ALJ further reasoned while Mr. Barnett asserts that he contacted the SSA before February 4, 2007, "at least as of that date he continued to receive benefits that he knew or should have known he was not entitled to," even if the SSA

5

continued sending benefits until September 2007 (*Id.*). The ALJ then found that recovery of the overpayment could not be waived since it would not defeat the purpose of the Title II of the Act or be against equity and good conscience (*Id.*).

Mr. Barnett appealed, and on July 12, 2011, the Appeals Council remanded the decision (R. 113-115). In its remand order, the Appeals Council stated that the ALJ did not cite the time period and amount of overpayment for which Mr. Barnett was responsible, and failed to cite any exhibits or offer sufficient rationale to support the finding that Mr. Barnett was not without fault. The Appeals Council additionally found that there was no evidence of Mr. Barnett's monthly income, assets and expenses to support the ALJ's finding that overpayment cannot be waived because it would not defeat the purpose of Title II of the Act, and additionally noted it was unable to fully review the case because the recording of the hearing was inaudible (R. 115). The Appeals Council stated that on remand, the ALJ should offer Mr. Barnett an opportunity for a hearing and determine whether there was an overpayment (*Id*). If so, the ALJ must then determine whether Mr. Barnett was "without fault" in causing or accepting overpayment, and if without fault, must obtain updated financial information to issue findings as to whether recovery of an overpayment would defeat the purpose of Title II or be against equity and good conscience (*Id.*).

The ALJ held the second hearing on November 1, 2011 (R. 256-266). Plaintiff again waived his right to an attorney and proceeded without representation (R. 258). The ALJ asked Mr. Barnett if his condition had changed since the prior hearing. Mr. Barnett responded he was "broker" (R. 260). He had $45.00 in a savings account and $137.00 in a checking account (*Id.*). Since the last hearing, he had to replace his furnace, which cost between $4,000.00 and

$4,100.00. In addition, his wife's car was almost dead, so he expected to have an additional $235.00 monthly expense for a $12,000.00 loan to buy her another car (R. 264).

The ALJ denied Mr. Barnett's request for a waiver in a brief written decision issued on November 22, 2011. The ALJ determined that Mr. Barnett was overpaid benefits in the amount of $24,443.00 for the period May 2006 through September 2007, and that he was not without fault in causing or accepting the overpayment (R. 13A). The ALJ further found that because Mr. Barnett was not without fault in causing or accepting the overpayment, its recovery was not waived (*Id.*). The ALJ noted "there does not appear to be any dispute that while receiving benefits, [Mr. Barnett] returned to work in March 2004, completed his [trial work period] in November 2005 and, was overpaid for the months of May 2006 through September 2007 in the amount of $24,443" (R. 12). The ALJ determined that Mr. Barnett was not without fault in accepting the overpayment even before the SSA advised him that he used up his trial work period in February 2007, because Mr. Barnett was "a college graduate, [who] knew what his earnings were and at least should have known that he was being sent checks that he was no longer entitled to" (R. 13).

The ALJ held that even if there was a period of time after having completed his trial work period when Mr. Barnett was reasonably in doubt as to his continued eligibility, it was necessary to require repayment because Mr. Barnett and his wife earn a total of $56,524.80 annually (R. 13). The ALJ noted that Mr. Barnett's household monthly expenses of $4,380.21 exceeded the net monthly earnings of $3,330.80 but found these expenses to be distorted by recent home repair costs (*Id.*). However, in recognition of Mr. Barnett's lack of assets or discretionary monthly income sufficient to repay the amount in lump sum, the ALJ found that Mr. Barnett should continue to make monthly payments of $40.00 (*Id.*).

Mr. Barnett again appealed the ALJ's decision, and the Appeals Council denied his request for review (R. 5-7). On April 5, 2013, Mr. Barnett filed a civil action in the United States District Court for the Northern District of Illinois (13 C 02548). On August 1, 2014, the district court granted an agreed motion reversing and remanding the Commissioner's decision back to the Appeals Council for further proceedings (13 C 2548, doc. # 35). The district court ordered that on remand, the Appeals Council address: (1) whether Mr. Barnett's overpayment resulted from an incorrect statement made by Mr. Barnett, or his failure to furnish material information, or his acceptance of a payment which he either knew or could have expected to know was incorrect; and, (2) whether recovery may be waived (R. 271; 1:13-cv-2548, doc. #35).

On May 21, 2015, the Appeals Council issued a decision finding that Mr. Barnett was overpaid $24,443.00 in DIB for the period August 2006 through September 2007, and that he was not without fault in causing the overpayment (R. 270-74). The Appeals Council reasoned that Mr. Barnett was not without fault because he failed to timely furnish information which he knew or should have known to be material in that he returned to work in 2004 but did not provide the SSA with this information until the SSA requested it in February 2006 (R. 273). The Appeals Council further reasoned that Mr. Barnett was not without fault because he never tried to return any of the payments after the SSA advised him on Jan. 25, 2007 of the "substantial" gainful activity limits for 2007. Rather, Mr. Barnett continued to accept payments he knew or could have been expected to know he was not entitled to receive (*Id.*). Therefore, the Appeals Council determined that recovery of the overpayment was not waived, and Mr. Barnett remained liable for its repayment. Because it found that Mr. Barnett was not without fault, the Appeals Council did not consider whether requiring repayment would defeat the purposes of the Act.

## III.

In cases reviewing the final decision of the Commissioner, the Appeals Council's decision will be upheld if it is supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Meuser v. Colvin*, No. 16-1052, -- F.3d --, 2016 WL 5682715, at *4 (7th Cir. Oct. 3, 2016); *Bauzo v. Bowen*, 803 F.2d 917, 921 (7th Cir. 1986). Evidence is substantial when it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *McKinzey v. Astrue*, 641 F.3d 884, 889 (7th Cir. 2011) (quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971)) (internal quotation marks omitted). The Appeals Council's findings must be supported by more than a scintilla of evidence but may be supported by something less than the greater weight or preponderance of the evidence. *Young v. Secretary of Health and Human Services*, 957 F.2d 386, 389 (7th Cir. 1992). The reviewing court must consider all evidence on the record; however, it may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner. *Shideler v. Astrue*, 688 F.3d 306, 310 (7th Cir. 2012); *Bauzo*, 803 F.2d at 923. The Appeals Council "must identify the relevant evidence and build a 'logical bridge' between the evidence and the ultimate determination." *Moon v. Colvin*, 763 F.3d 718, 721 (7th Cir. 2014).

Mr. Barnett has not challenged the Appeals Council's findings that he was overpaid DIB, or the amount of the overpayment. There also is no dispute that the SSA may waive the recovery of an overpayment only if: (1) the recipient is without fault in causing the overpayment; and, (2) recovery either defeats the purpose of the Social Security Act or goes against equity and good conscience. *See* 42 U.S.C. § 404(b); 20 C.F.R. § 404.506; *see also Banuelos v. Apfel*, 165 F.3d 1166, 1169 (7th Cir. 1999) (overruled on other grounds by *Johnson v. Apfel*, 189 F.3d 561 (7th Cir. 1999)). While the SSA has the burden of proving the overpayment exists, the recipient has

9

the burden of showing he is entitled to a waiver of repayment. *Begoun v. Astrue*, No. 09 C 1555, 2011 WL 307375 at *8 (N.D. Ill. January 28, 2011).

## A.

For the purpose of determining liability for overpayment, an individual is at fault when the overpayment resulted from either: (1) an incorrect statement made by the recipient that he knew or should have known was false; (2) failure to furnish information that the recipient knew or should have known was material; or, (3) acceptance of a payment that he knew or could have been expected to know was not the correct amount. 20 C.F.R. §§ 404.507(a)-(c), 404.506; 42 C.F.R. § 405.355. It does not matter if the SSA is also at fault for mistakenly paying benefits to which a recipient is not entitled; if the claimant is at fault under any of the above three categories, then he or she is liable to repay the overpayment. *Id.*; *Kainer-Cargile v. Colvin*, No. 11 CV 7435, 2013 WL 5587084, at *4 (N.D.Ill. October 10, 2013). "The decision which must be reached in a fault determination is highly subjective, highly dependent on the interaction between the intentions and state of mind of the claimant and the peculiar circumstances of his situation." *Piskorek v. Colvin*, 13 CV 3831, 2014 WL 5152565, at *7 (N.D. Ill. Oct. 7, 2014) (quoting *Kainer–Cargile,* 2013 WL 5587084, at *4). When determining fault, the SSA must consider the individual's age and intelligence, and take into account any physical, mental, educational, or linguistic limitations that an individual may have. *Kainer–Cargile,* 2013 WL 5587084, at *4; 20 C.F.R. § 404.507; 42 U.S.C. § 404(b).

Mr. Barnett contends that the Appeals Council's finding that he was not without fault was not supported by substantial evidence. We find substantial evidence supports the Appeals Council's finding that Mr. Barnett was not without fault for accepting payments that he knew he was not entitled to receive after January 2007. The evidence shows that Mr. Barnett knew or had

reason to believe that he was not entitled to payments after January 2007, because - - by his own admission - - after receiving the January 25, 2007 letter he quickly contacted the SSA on February 5, 2007, and then again in July 2007, to request that his checks be stopped. Moreover, Mr. Barnett knew that he had been working full time since May 2006 and earning at least $15.00 per hour. That is significant because the January 25, 2007 SSA letter informed Mr. Barnett that he would not be entitled to continued benefits if he earned more than $860.00 per month in 2006 and $900.00 per month in 2007 (R. 54), and he surely knew his full time work since May 2006 placed him at an income level well in excess of those amounts.

However, Mr. Barnet did not try to return any of the payments he received after the January 25, 2007 letter. Although the SSA did not notify him of the overpayment until August 2007, Mr. Barnett "is not absolved of liability" where he knowingly accepted the overpayment. *Begoun*, 2011 WL 307375 at *8. Thus, the Court finds substantial evidence in the record supports the Appeals Council's finding that, after receiving the January 25, 2007 letter, Mr. Barnett was not without fault because he accepted payments that he knew or could have been expected to know he was not entitled to receive.

The Appeals Council's decision that Mr. Barnett is not without fault for payments made from August 2006 through January 2007 based on his failure to timely furnish information, stands on less solid footing. The Appeals Council determined that Mr. Barnett failed to furnish information that he knew or should have known was material because Mr. Barnett returned to work in 2004, but did not provide the SSA with information regarding his work activity until June 2006, after the SSA requested a Work Activity Report on February 25, 2006 and then issued a follow up request on June 6, 2006 (R. 273 (citing R. 227)). However, there is no evidence from the hearings, or the ALJ's or the Appeals Council's decisions, establishing that

Mr. Barnett had knowledge of the work activity reporting requirements prior to the SSA's February 2006 request. Nor is there any finding that the length of time Mr. Barnett took to respond to the request was unusual, or suggestive of an intent to withhold information. And, most importantly, there is no finding explaining why Mr. Barnett's failure to report his return to part-time work in 2004 was material; indeed, the SSA's January 25, 2007 letter stating that Mr. Barnett's part-time work was not "substantial" (R. 54) suggests the contrary. We find the Appeals Council failed to build a logical bridge between the evidence in the record and its determination that Mr. Barnett failed to furnish information that he knew or should have known was material. The Commissioner's lack of adequate discussion on these issues is sufficient alone to remand this case. *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009).

Additionally, neither the ALJ nor the Appeals Counsel developed the record or addressed Mr. Barnett's state of mind and subjective belief concerning his reporting obligations. These subjective factors must be considered in determining whether he was at fault in causing the overpayment. *Piskorek*, 2014 WL 5152565, at *7; *Begoun*, 2011 WL 307375, at *7. The ALJ has a duty in all cases to develop a full and fair record, and that duty is heightened where a claimant appears without counsel as Mr. Barnett did during both hearings. *Nelms v. Astrue*, 553 F.3d 1093, 1098 (7th Cir. 2009).

In correspondence with the SSA throughout these proceedings, Mr. Barnett stated he did not believe he was at fault as he reported to the SSA that he was working full time as of May 2006 in the Work Activity Report completed on June 12, 2006 (R. 64, 81, 86). Further, in a letter to the Appeals Council dated January 24, 2010, Mr. Barnett states in relevant part:

> Although I was disabled, I chose to take a part time job to pay for health insurance, I did go to my local Social Security office and speak to a representative of that office in 2004, this should be on record because I did have to sign in. I was told by the representative

12

> that as long as I did not earn over $800.00 a month I did not have to report it to the social security administration.
>
> In 2006 when I started working full time I reported it immediately to my local social security office, since I received no correspondence from the social security office I believed I was working under my trial work period, at no time did I believe I was being over paid.
>
> You will find in the work activity report that I completed June 12, 2006, that I did give your office timely information regarding my work status. I informed your office that I was working full time and no action was taken by your office.

(R. 105).

The ALJ and Appeals Counsel were not required to accept Mr. Barnett's statements uncritically. For example, it would have been fair to probe these statements against the backdrop of Mr. Barnett's June 2006 report stating that his full time work was "probationary" and his failure to state his rate of pay for that work. And, it might have been important to develop the record to explain when the "probationary" employment became "permanent." However, neither the ALJ nor the Appeals Council questioned Mr. Barnett or addressed his subjective belief that he was only required to report to the SSA when he had full time work and was making more than $800.00 per month. "Courts recognize that a claimant's subjective beliefs and understanding of his reporting obligations concerning the trial work period are relevant considerations in determining whether a claimant is without fault in causing an overpayment." *Begoun*, 2011 WL 307375, at *9.

In *Begoun*, the court found it significant that the ALJ failed to question the claimant to further develop the record regarding his awareness of the work period reporting requirements. "[H]ad the ALJ confronted Claimant with the August 23, 1996 notice letter as the lynchpin of his analysis of whether Claimant was aware of the trial work period reporting requirements, and depending upon Claimant's response to that inquiry, the ALJ might have further developed the

13

record on the issue of whether Claimant knew or should have known about his reporting obligations concerning the trial work period." *Begoun*, 2011 WL 307375, at *10. Similarly, in the instant case, the ALJ failed to confront or question Mr. Barnett about his understanding of the work activity reporting requirements or omissions from what he reported. On remand, the Commissioner should reconsider whether Mr. Barnett was without fault for overpayments received for the period August 2006 through January 2007.

**B.**

If Mr. Barnett is found not at fault in causing the overpayments made between August 2006 and January 2007, a waiver of recovery may be granted only if recovery would either defeat the purpose of Title II of the Act or be against equity and good conscience. 20 C.F.R. § 404.506(a).[6] While the ALJ in his November 22, 2011 decision discussed Mr. Barnett's financial ability to repay the overpayment, the Appeals Council did not address whether requiring repayment would either defeat the purpose of Title II or be against equity and good conscience because it found Mr. Barnett to be at fault for the overpayment.

Requiring repayment would "defeat the purpose of Title II" if it would "deprive a person of income required for ordinary and necessary living expenses." 20 C.F.R. § 404.508(a). Ordinary and necessary expenses include: fixed living expenses such as food and clothing, mortgage payments, utilities, maintenance, insurance, taxes, installment payments, and other miscellaneous expenses that might reasonably be considered as part of the individual's standard of living. *Id*. While not making a specific finding, the ALJ stated in his November 22, 2011 decision that "even if there was a period after the claimant completed his [trial work period] that

---

[6] Repayment of an overpayment will be against equity and good conscience if the individual either: (1) changed his position for the worse or (2) relinquished a valuable right because of reliance on a notice that a payment would be made or because of the overpayment itself. 20 C.F.R. § 404.509(a). There is no evidence in the record nor has Mr. Barnett argued that he has changed his position or relinquished a valuable right because of overpayments.

14

he was reasonably in doubt as to his continued eligibility, requiring repayment is, in any case, warranted, given his financial situation" (R. 13).

In his decision, the ALJ set forth in detail the then-updated financial information Mr. Barnett provided at the November 2011 hearing reflecting that he and his wife are steadily employed and have net monthly earnings of $3,330.80 and monthly expenses of $4,380.21 (*Id.*). The monthly expenses at the time of the hearing included $688.00 credit card payments that reflect $30,000.00 owed in part due to $10,000.00 owed for repairing a broken sewer line. The ALJ concluded that because Mr. Barnett "lacks current assets to repay and his expenses having been distorted by recent home repair costs, continued incremental recovery at $40 per month is warranted" (*Id.*). As noted by Mr. Barnett, however, even if the $688.00 per month for credit cards is deducted from their monthly expenses, the Barnetts' combined income of $3,330.80 still does not cover the remaining $3,692.21 in monthly expenses. Under the regulations, recovery of an overpayment defeats the purposes of Title II "where the person from whom the recovery is sought needs substantially all of his current income … to meet current ordinary and necessary living expenses." 20 C.F.R. § 404.508(b). The ALJ failed to explain how he determined that repayment would not defeat the purpose of Title II where the evidence shows the Barnetts' monthly expenses are greater than their monthly net income.

On remand, if Mr. Barnett is found without fault for some or all of the payments made between August 2006 and January 2007, the Commissioner must address this issue by obtaining updated financial information from Mr. Barnett and determining whether requiring repayment would defeat the purpose of Title II.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment (doc. # 16) is granted in part and denied in part. The case is remanded for further proceedings consistent with this opinion. This case is terminated.

ENTER:

SIDNEY I. SCHENKIER
United States Magistrate Judge

DATE: November 15, 2016